UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTIAN ALMONTE, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 14-cv-10538-IT |
| | * | |
| BRUCE GELB,[1] | * | |
| | * | |
| Respondent. | * | |

ORDER

March 16, 2015

TALWANI, D.J.

I.        Introduction

In March 2014, Petitioner Christian Almonte ("Almonte") filed a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [#1], which raised six grounds for habeas relief related to Almonte's 2009 conviction for murder in the first degree and grand larceny. Currently before the court is Respondent Bruce Gelb's unopposed Motion to Dismiss Petition for Writ of Habeas Corpus [#10]. For the reasons detailed herein, Respondent's motion to dismiss is ALLOWED.

II.       Discussion

Respondent's motion to dismiss was filed on June 2, 2014. See Mot. Dismiss Pet. Habeas Corpus [#10]. Because Almonte did not oppose this motion, on September 8, 2014, the

---

[1] Almonte originally named Luis Spencer, the Commissioner of the Massachusetts Department of Correction, as Respondent. Because the appropriate respondent to a petition for a writ of habeas corpus is the petitioner's direct custodian, see Vasquez v. Reno, 233 F.3d 688, 691 (1st Cir. 2000), the court substituted Bruce Gelb, who is Superintendent of the facility where Almonte is incarcerated. See Order [#21].

court issued an Order to Show Cause [#13] why the case should not be dismissed. Almonte responded and requested an extension of time to file his opposition, which was granted. See Electronic Order [#15]. Subsequently, the court granted a second motion for an extension of time and reset the deadline for Almonte's opposition to December 14, 2014. See Electronic Order [#20]. Almonte still did not file an opposition. Accordingly, it would be within the court's power to allow the motion to dismiss as unopposed. However, cognizant of Almonte's pro se status, the court will briefly reach the merits of each claim so as to fully explain the reasons for the petition's denial. Facts relevant to each of Almonte's claims are included in the court's discussion of those claims.

    1. *Partial Denial of Almonte's Motion to Suppress*

Before the trial court, Almonte moved to suppress evidence seized during a search of his apartment. See Commonwealth v. Almonte, 988 N.E.2d 415, 421 (Mass. 2013). After holding two hearings and requesting additional briefing, the trial court allowed the motion in part and denied the motion in part. See id. at 422-32 & n.9. While suppressing other physical evidence taken from the apartment, the trial court allowed the Commonwealth to admit at trial a sock with bloodstains on it that matched the victim's DNA. See id. at 423-24. Ground One of Almonte's petition argues that this partial denial of his motion to suppress violated his Fourth Amendment rights.

The Supreme Court has held that, where state proceedings "provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482 (1976). Accordingly, "a federal habeas court . . . cannot revisit a state court's disposition of

a prisoner's Fourth Amendment claims" unless the petitioner "had no realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system." Sanna v. Dipaolo, 265 F.3d 1, 8 (1st Cir. 2001); see also Pignone v. Sands, 589 F.2d 76, 77 (1st Cir. 1978). The First Circuit characterizes the opportunity for a full and fair litigation as one in which the "state has made available to defendants a set of procedures suitably crafted to test for possible Fourth Amendment violations." Sanna, 265 F.3d at 9.

Here, the trial court held two hearings regarding the propriety of the search warrant, ordered additional briefing on specific issues, and eventually allowed the motion in part. See Almonte, 988 N.E.2d 422-23 & n.9. The Massachusetts Supreme Judicial Court affirmed this decision in a reasoned opinion. See id. at 421-24. This constitutes an opportunity for a full and fair litigation of Almonte's Fourth Amendment claim. See Sanna, 265 F.3d at 8-9 (holding that an evidentiary hearing, written opinion by the trial court, and appellate review of relevant legal issues constituted an opportunity for full and fair litigation); Pignone, 589 F.2d at 80 (holding that two hearings at the trial level and two resulting appeals constituted an opportunity for full and fair litigation even where the trial court applied incorrect legal principles); see also Palmigiano v. Houle, 618 F.2d 877, 882 (1st Cir. 1980) (collecting cases finding the opportunity for a full and fair litigation). Accordingly, habeas corpus relief is unavailable on this ground.

  2. *Improper Statements at Trial*

Grounds Two, Three, and Five of Almonte's petition relate to allegedly improper statements and evidence admitted at trial. Namely, Almonte claims that: (1) the prosecutor made improper remarks during his opening statement and closing argument,[2] (2) the DNA analyst gave

---

[2] Almonte claims that the prosecutor's remark that "the defendant, Christian Almonte, murdered William Escobar" was an improper statement of the prosecutor's personal opinion. See Almonte, 988 N.E.2d at 235. Almonte further argues that the prosecutor misstated the meaning of the inconclusive DNA test result—suggesting that the result was a near-match, rather than that

3

a prejudicial and non-responsive answer to a question about the meaning of inconclusive DNA test results in relation to blood found on Almonte's hands,[3] and (3) the court improperly admitted the victim's death certificate without redacting the means and manner of death[4] and allowed the medical examiner to state that the death was a homicide. Almonte did not object to any of the allegedly improper statements or the admission of the death certificate at trial. Accordingly, the Supreme Judicial Court found the claims procedurally defaulted and reviewed them only for a substantial likelihood of a miscarriage of justice. Almonte, 988 N.E.2d at 424, 426-27, 429.

The First Circuit has consistently held that Massachusetts' contemporaneous objection rule, under which any objection not raised at trial is deemed procedurally defaulted, is an independent and adequate state law ground for a judgment. See Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010) ("[The First Circuit has held] with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground . . . ."); Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002). Generally, federal courts may not review a question of federal law presented in a habeas petition if the state court's decision rests upon a state-law ground that is independent of the federal question at issue and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729 (1991). Review of procedurally defaulted claims is appropriate only if a petitioner

---

there was an insufficient sample size to test—when he said that Escobar's DNA was the only sample tested against the blood on Almonte's hands "that couldn't be excluded." See id. at 426.

[3] After explaining that an inconclusive result indicates that there was an insufficient amount of DNA to determine if a particular sample matched, the DNA analyst stated that, as to the blood on Almonte's hands, "there w[ere] sort of results that could kind of go either way as far as [the victim] being there, which [is] why I said inconclusive." Almonte, 988 N.E.2d at 424. Almonte claims that the jury could have understood this latter statement to mean that the blood on Almonte's hands was a near-match to Escobar's DNA.

[4] The certificate listed the manner of death as "homicide" and the means of death as "stabbed by other[s]." See Almonte, 988 N.E.2d at 428-29.

shows both cause for the default and resulting prejudice or "that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750.

Because Almonte did not oppose Respondent's motion to dismiss, he has not made a showing of cause and prejudice. Moreover, even presuming that Almonte had attempted to establish cause for the default,[5] there is an absence of evidence that prejudice resulted from the alleged errors at trial. To establish prejudice, a petitioner must demonstrate that the error made at trial created not only a possibility of prejudice, but "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" See Ortiz v. DuBois, 19 F.3d 708, 714 (1st Cir. 1994) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).[6]

As to the prosecutor's remarks during opening statements and closing arguments, the First Circuit has held that standard jury instructions may mitigate potential prejudice from prosecutorial misconduct. Pena v. Dickhaut, 736 F.3d 600, 605 (1st Cir. 2013); Gomes v. Brady, 564 F.3d 532, 539 (1st Cir. 2009). Here, the judge instructed the jury about the purpose of opening and closing statements before the prosecutor gave his statements and properly informed the jury that these remarks were not evidence. Almonte, 988 N.E.2d at 424, 427. Moreover, the challenged remarks were isolated comments made during more comprehensive statements. See

---

[5] Before the Supreme Judicial Court, Almonte briefly raised the argument that his trial counsel was ineffective. See Murray v. Carrier, 477 U.S. 478, 488 (1986) (holding that constitutionally ineffective counsel may suffice to show cause).

[6] Although formally distinct inquiries, the "prejudice" in the cause-and-prejudice test is the same as the "prejudice" required to show constitutionally ineffective assistance of counsel. See Prou v. United States, 199 F.3d 37, 49 (1st Cir. 1999) ("Given the striking linguistic parallel, we conclude that the Frady and Strickland prejudice standards are one and the same."). Accordingly, Almonte's inability to show prejudice sufficient to overcome his procedural default would also independently defeat any claim that cause for that default arose from constitutionally ineffective assistance of counsel.

Gomes, 564 F.3d at 549; United States v. Allen, 469 F.3d 11, 17 (1st Cir. 2006). Given the isolated nature of the comments and the judge's instructions to the jury, it is not reasonably probable that but for these comments the verdict would have been different. Accordingly, there is no evidence of resulting prejudice.

Almonte similarly cannot show prejudice arising from the DNA analyst's non-responsive answer. This answer was an isolated comment made in the course of proper testimony. See Gomes, 564 F.3d at 549; United States v. Allen, 469 F.3d 11, 17 (1st Cir. 2006). Moreover, unchallenged evidence showed that the victim's blood was found on a hooded sweatshirt which was seized from Almonte during the same police interview in which his hands were tested for blood. See Almonte, 988 N.E.2d at 425. Accordingly, even if the jury mistakenly thought that blood on Almonte's hand was a near-match to the victim's, the effect of that mistaken belief is largely cumulative in light of the blood evidence discovered contemporaneously on Almonte's clothing. See United States v. Sepulveda, 15 F.3d 1161, 1185 (1st Cir. 1993) ("We have routinely found cumulative evidence impotent when accidentally uncorked."); see also Smith v. Thompson, 329 F. App'x 291, 295 (1st Cir. 2009) (affirming district court's finding of no prejudice when the testimony elicited on cross-examination was cumulative of properly admitted testimony on direct examination); United States v. Morris, 700 F.2d 427, 431 (1st Cir. 1983). Accordingly, there is no evidence of a reasonable probability that but for this comment the jury verdict would have been different.

Finally, there is no evidence of resulting prejudice arising from admission of the non-redacted death certificate and the statement by the medical examiner that the victim's death was a homicide. As the Supreme Judicial Court noted, there was no dispute in this case that the victim had been murdered. Cf. Commonwealth v. Tarver, 345 N.E.2d 671, 681 (Mass. 1975)

(recognizing that introduction of the method of death may be prejudicial if defense is predicated on theory of accidental death (citing Commonwealth v. Lannon, 306 N.E.2d 248, 250-51 (Mass. 1974)). Accordingly, statements regarding the means and manner of the victim's death, without any suggestion of Almonte's involvement, could not reasonably have affected the verdict.

In the absence of a showing of cause and prejudice, the court reviews Almonte's claims only to ensure there is no substantial risk of a miscarriage of justice. Janosky, 594 F.3d at 46. A substantial risk of a miscarriage of justice occurs only when a petitioner makes a showing of actual innocence. Id. Because Almonte makes no claim of actual innocence, and none is evident on the record, the exception is inapplicable here. Accordingly, the court finds that habeas corpus relief is unavailable on these three grounds.

### 3. Cross-Examination of DeLeon

At trial, Almonte attempted to impeach a Commonwealth witness, Jose DeLeon ("DeLeon"),[7] through prior bad act evidence allegedly probative of DeLeon's untruthfulness. Applying Massachusetts evidentiary rules, the trial court allowed Almonte to impeach DeLeon through introduction of his past criminal convictions, but barred questioning about non-conviction conduct. Namely, Almonte was unable to question DeLeon about whether DeLeon had previously lied to the police about his name, lied to the police about a stolen cell phone, and told a witness not to talk to the police. Ground Four of Almonte's petition asserts that the trial

---

[7] At trial, DeLeon testified that Almonte had been with him on the night of the victim's death until approximately 8:30 p.m., when Almonte received a phone call. See Almonte, 988 N.E.2d at 419. According to DeLeon, Almonte then left DeLeon's apartment for approximately one hour and returned with the victim's car, which he gave to DeLeon. See id. When DeLeon was later found by police in possession of the victim's car, he initially lied, saying he had received the vehicle from "Johnny Torres." See id. at 428.

7

court's exclusion of this impeachment evidence violated Almonte's Sixth Amendment rights to a fair trial and to confront the witnesses against him.

Federal Rule of Evidence 608(b) allows for the questioning of a witness about non-conviction conduct that is probative of truthfulness. In contrast, Massachusetts' evidentiary rules bar such questioning. Compare Fed. R. Evid. 608, with Mass. G. Evid. § 608(a), and Commonwealth v. Olsen, 892 N.E.2d 739, 745 (Mass. 2008). Before the Supreme Judicial Court, Almonte argued that the Supreme Judicial Court should amend the state rule to comply with its federal counterpart. Almonte also argued that, as applied, the Massachusetts rule prevented him from presenting a full defense and from confronting the witnesses against him. The Supreme Judicial Court's opinion declined to change the state evidentiary rule. It did not, however, expressly address Almonte's federal claims. See Almonte, 988 N.E.2d at 428.

Where a federal claim was raised but not treated on merits by the state court, federal habeas review is de novo. See Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006). Where the claim was treated on the merits, the federal court's review asks only whether the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

The First Circuit has held that to treat a claim on the merits, a state court need not necessarily have expressly addressed and resolved that claim in its opinion. See Hodge v. Mendonsa, 739 F.3d 34, 41-42 (1st Cir. 2013) (holding that citation to a state court decision that itself treated the federal claim raised, and cited appropriate federal law, was sufficient to address the federal claim on the merits); Clements v. Clarke, 592 F.3d 45, 54 (1st Cir. 2010) (same). Further, the Supreme Court has recognized that "it is by no means uncommon for a state court to

fail to address separately a federal claim." Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). Accordingly, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." Id.

Here, the Supreme Judicial Court cited Commonwealth v. Bohannon, 378 N.E.2d 987 (Mass. 1978), for the proposition that Massachusetts' evidentiary rule is not inflexible, and that non-conviction conduct probative of truthfulness may be admitted when necessary to ensure a defendant's right to a full defense. See id. at 990-91 (citing Chambers v. Mississippi, 410 U.S. 284 (1974)). By citing Bohannon, which dealt with the same issue, the Supreme Judicial Court sufficiently invoked Almonte's right to present a full defense so as to constitute adjudication of that claim on the merits under the standard set by the First Circuit in Clements and Hodge. Accordingly, the court reviews Almonte's argument that he was unable to present a full defense under the deferential standard articulated in 28 U.S.C. § 2254(d).

During cross-examination, Almonte questioned DeLeon about twelve prior convictions and DeLeon's use of a false name when questioned by police regarding how he had come into possession of the victim's car. See Almonte, 988 N.E.2d at 428. In light of these opportunities for impeachment, the Supreme Judicial Court's ruling that the exclusion of specific instances of bad-act evidence was not unconstitutional is not contrary to clearly established law. See Chambers, 410 U.S. at 302 (holding that state evidentiary rules cannot be "applied mechanistically" to exclude evidence "*directly affecting* the ascertainment of guilt" (emphasis added)); Santiago v. O'Brien, 628 F.3d 30, 35 (1st Cir. 2010); Fortini v. Murphy, 257 F.3d 39, 47-48 (1st Cir. 2001) (holding that exclusion of evidence that "increased the likelihood" of a material fact but was not critical to the petitioner's claim was not unconstitutional).

9

None of the cases cited by the Supreme Judicial Court address the Confrontation Clause. See Almonte, 988 N.E.2d at 428. Nonetheless, because Almonte has not filed an opposition attempting to rebut Johnson's presumption that his Confrontation Clause claim was adjudicated on the merits, the court could properly adopt that presumption. However, because Almonte's claim fails even under de novo review, the court need not address the application of Johnson in order to resolve this issue.

On de novo review the court asks whether, despite the trial court's evidentiary ruling, Almonte "was afforded a reasonable opportunity to impeach" DeLeon. United States v. Callipari, 368 F.3d 22, 36 (1st Cir. 2004); Gomes, 177 F.3d at 82 (1st Cir. 1999). Here, Petitioner was able to cross-examine DeLeon, present evidence of DeLeon's twelve past criminal convictions, and question DeLeon about why he gave a false name to the police when questioned about where he had received the victim's car. This constitutes a sufficient opportunity for impeachment so as to overcome any Confrontation Clause issue. See United States v. Martinez-Vives, 475 F.3d 48, 54 (1st Cir. 2007); United States v. Anderson, 139 F.3d 291, 303 (1st Cir. 1998) ("Dispositive is the fact that the record reveals that both defendants' attorneys were given ample room to impeach . . . credibility otherwise."). Accordingly, habeas corpus relief is inappropriate on this ground.

### 4. *Sufficiency of the Evidence*

Ground Six of Almonte's petition contends that there was insufficient evidence at trial to find him guilty. The Supreme Judicial Court reviewed this sufficiency-of-the-evidence claim to determine whether, based on the evidence submitted at trial, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See Almonte, 988 N.E.2d at 429 (emphasis omitted). This is the appropriate legal standard for sufficiency-of-the-evidence claims, as articulated by the Supreme Court. See Jackson v. Virginia, 443 U.S. 307, 319 (1979)

(using identical language). Because the claim was addressed on the merits under the appropriate legal standard, the court's review of Almonte's claim is limited to determining whether the Supreme Judicial Court's decision amounted to an "unreasonable application" of law. See 28 U.S.C. § 2254(d); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001).

At trial, the Commonwealth presented DNA evidence that blood found on two pieces of Almonte's clothing matched the victim's DNA. See Almonte, 988 N.E.2d at 429. The Commonwealth presented further evidence that Almonte and the victim had previously been in a sexual relationship and that a friend of the victim's had once heard Almonte threaten the victim with death should he discover the victim had sexual relations with anyone else. Id. at 418. DeLeon also testified that, on the night of the victim's death, Almonte was at DeLeon's apartment until he received a phone call at around 8:30 p.m. See id. at 419. When Almonte returned approximately one hour later, he appeared agitated and was driving the victim's car. See id. The Commonwealth presented phone records showing that the victim had called Almonte at 8:39, 8:41, and 8:49 p.m. See id. at 419 n.4.

In light of this evidence, the Supreme Judicial Court's ruling that there was sufficient evidence to sustain a finding of guilt was not an unreasonable application of law. Accordingly, habeas corpus relief is inappropriate on this ground.

IV. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus [#10] is ALLOWED.

IT IS SO ORDERED.

March 16, 2015                                             /s/ Indira Talwani
                                                           United States District Judge